Good afternoon. Darren Quinn for Plaintiff and Appellant Bauer Bros., who is the owner of the registered trademarks Don't Tread on Me and DTOM. Tell me what the T-shirts look like. It's in the record. When you say the T-shirts, are you talking about Bauer's T-shirts or Nike's? No, Nike's, I know. Yours. Is there any kind of depiction or is it simply the words? That's all I want to know. Both. So in the front, on many of the designs, it may say Don't Tread on Me on the front. The most important use, however, of Don't Tread on Me is in the neck label, which is the standard place to put a trademark source identifier. It says Don't Tread on Me. In fact, one of the issues on this appeal is the exclusion of a silkscreen that shows Don't Tread on Me back in 2005, October 2005. I understand, but there's no picture. I don't want to call it a cartoon. There's no flag. That's what I meant. Okay. There's no flag. That's all. You've answered my question. I'm sorry. So let me ask you this, Counsel. The district court granted summary judgment against your client. Assuming that we find that it was not an abuse of discretion to exclude the silkscreen evidence and we allow you to proceed to trial, what evidence would you present that would demonstrate prior use in commerce? You've got the postage receipts, but those records don't really show the Don't Tread on Me logo. So I just want like a succinct summary of what you would have. Okay. For use. So I can test the district judge's summary judgment ruling. And let me say, I'm sorry, but Judge Nguyen, it's hard to predict. I mean, I don't think there's any abuse of discretion at all. Given the circumstances, the last-minute pop-up of this item, crucial item, I agree. But it does seem to me that the harm that would have been caused by that last-minute production has evaporated. Nike's had this thing forever long. It's been apparent. It would seem to me, in your position, you go back and say to the district court, look, okay, the Ninth Circuit said it was okay to keep it out, but now we're going on for trial. At the very least, please open the discovery period as a purpose of an emotion limiting thing. Please tell us whether or not you'll let it in. Some judges might. Some judges wouldn't. But it seems to me that's a way you can, I don't know, just a thought. So assuming that the district judge then says, nope, not going to let that back in. You unfairly surprised them by popping up the silkscreen evidence. What are you left with? Okay. So what I would seek on this appeal. And all, you know, don't tread on me. That's been around since 1775. Huh? There's not. So why does your client grab a hold of that and say, I've got an ownership interest in it? Well, there's a difference between an ornamental use and a trademark use. My client is using don't trade on me and DTOM as a source identifier. Just like Nike uses Air Force One as a trademark, and I listed in the opening brief several other different historical references. That's not an issue. In fact, the district court said, look, that's not an issue. We can have, we can trademark historical phrases because the issue is source identifier. But the issue on this appeal, I think. But what evidence do you have that it's a source identifier as to your T-shirt? Okay. Well, when you look at the record, there's going to be testimony that my client used. I'm going to call it a neck label. It's actually printed in, but I'm going to call it a neck label. Also for the DTOM shirt, the specimen given to the Patent and Trademark Office was a hang tag. In evidence, we had produced a number of different don't trade on me and DTOM hang tags. So there's not a question. And also we've got unrebutted evidence that in all of their shirts it always had don't trade on me or DTOM in the neck label. So that's going to be the issue with respect to the proof of trademark use as opposed to an ornamental use. You've got your client's testimony, essentially. The same person who filed the applications that he admitted included uses that really weren't in use? That is correct. But we also have documentary evidence showing the hang tags. We also have examples of shirts showing the neck label use. But in the issue of prior use, who came forth in the commerce with this phrase? Yes, Your Honor. I'd like to focus on that. Because the issue on this, the way I view this appeal, is the court needs to grapple with and affirm the presumption of validity. When there's a presumption of validity under Federal Rule of Evidence 501, excuse me, 301, Nike has to come forward with evidence to show affirmatively the non-existence of the presumed facts. And when you look at the record, you realize Nike has not done that. Nike has not done any investigation as to whether they're showing non-use prior to 2004, which is when the Don't Tread on Me trademark application was filed. Nike, its evidence is a declaration from its investigator that says, oh, I spoke with Luke Bauer, and he was silent. And so I assumed from silence that the shirts weren't being sold. And who knows what the question was or whether the pertinent question was asked. I get that. It's just silence. I mean, it seems to me quite candidly that, I mean, to the extent I'm inclined to agree that this should go back for a trial, which I think is what you're talking about, it is, there is his testimony that we were selling this before X. He had no corroborative evidence of any significance, so far as I could tell, except the silkscreen thing. And that's maybe in or out, depends upon what the judge has to say. And it just seems to me, I mean, it's a question of credibility. There's a lot of reason to doubt his credibility, candidly, but I don't think that's for a district judge to make that kind of call at that stage. And I agree with everything you've said, but what I'd like the Ninth Circuit to consider is when we're talking about a presumption, when we're talking about a trademark, let's talk about when you get a trademark, all that's been required since the beginning of time, which is the 1800s, was a declaration. Well, now that Nike comes forward and says, I want to rebut it, but actually doesn't establishly, affirmatively establish that there's any country or artist. It's not very hard to get a trademark, is it? Say that again, Your Honor. It's not hard to get a trademark. It's Congress made it, so a declaration is all you need. But now there's a double standard that my client has to come forward with documentary evidence, such as sales invoices to show, oh, show me you really did that. Now, the example I gave, which is going to become more and more important for the bigger companies, you've got Budweiser back in the 1800s. Everybody's dead. No one knows if anything was sold. There's probably not any documentary evidence. Nike, it's always been reputed. It started in the back of the Plymouth, selling out of the back of a trunk 40 years ago. Who's still alive that knows about this, that still remembers? Where's the evidence? So as we go forward, what ends up happening is the longer the mark goes, the easier it is to attack. No, we understand that as a resident, you've got the benefit of the presumption. And this isn't a case that goes back to the 1800s. We're talking about priority of use in the market before 2005 or so. It's not very far back. But we understand that the issue is whether they've come forward with sufficient evidence to rebut that presumption and whether there are disputed factual issues that are sufficient for purposes of trial. Right? That's the key. You want to go back for trial and have the case essentially rise and fall on your client's credibility. I think it should go back. I think the jury should be entitled to see the presumption of the registration. Nike can present whatever evidence it wishes, assuming that the court finds at this level that it's even submitted anything affirmatively to show non-use. It has to affirmatively show non-use, not silence. It never did that. My client has never said, oh, I admit, I never sold it. That never happened. And you do make the point that their investigator, in what, three days, didn't bother going to the store and taking a look. Didn't bother. And, again, that's what brings up the silkscreen. Not so much as to prior use, but as to show, hey, he said that it wasn't even being used, but this silkscreen is going to be directly relevant to impeach him to say, well, ten days before he got the assignment, here's a silkscreen that says October 20th. That's important. And what's the significance of that? I mean, I realize, as I say, I agree it was properly excluded by the judge. But what is the significance if it were to be admitted at a trial? I didn't quite get that from the briefs. Why does that matter? It is relevant to impeach Mr. Kelly, who said that he didn't find any evidence it was being used. It's actually, that silkscreen is not relevant as to prior use at all, when you think about it. It doesn't show any use prior to the trademark application. It doesn't show any use prior to the trademark registration. What it's relevant to is that Mr. Kelly said, I didn't see anything in November 2005, and yet here's this silkscreen that says October 20th, ten days earlier, 2005. It exists with the trademark on the back. Yeah, but if it didn't come into the case until the last minute, how can he find something that apparently your client said and produced to you or somebody else to get into court? It came up in connection in opposing and impeaching Nike's summary judgment evidence. Just as a trial, if Mr. Kelly took the stand and he said something like that, I would be able to impeach him right there. Summary judgment is no different. He said there is nothing in November, and I said, no, I can impeach you. There is. Well, you had that evidence since the summer of 2011. I think it's within the scope of Rule 26 to supplement discovery and produce it. Well, that raises the issue I'd like the court to grapple with is, what is the obligation to produce documents and evidence when there's a presumption of validity? Do you have to say, just disregard that and say, okay, if you're Nike and you're going to do a trademark infringement action, you say, I know I've got a registered trademark, but I'm going to show all of my invoices and sales invoices prior to that date, assuming they even exist since they were selling out of the back of a trunk. Well, you were extending that trademark to, what, 100 more items? 114. 114, yeah. And let me also, I'm sorry, I just don't find an abuse of discretion in what the magistrate did. At that point in time, it just, I've been there and done that, both as a magistrate judge and a district judge, and magistrates have huge discretion, and district courts rarely reverse them, but under all those circumstances, where this thing pops up at the last minute, it's kind of pulled out from wherever, and the whole idea of the civil rules is to avoid trial by ambush. I understand that Magistrate Judge Skolmo said Nike never even requested this, so it raises that issue. But I want to also raise, okay, we're talking summary judgment, and we've also talked about trial. What about when can a witness's recollection be refreshed? If you're at trial, are you saying that his memory cannot be refreshed by a silkscreen? Well, I think that's a question for trial. And the trial judge, if it gets that far, but you've only got about a minute left, do you want to save some time? I better save my minute, or however long you'll give me. Thank you. Good afternoon, Your Honors. I'm Stanley Penichowski from DLA Piper, and I represent Nike. Your Honors, Bauer asked this court to place dispositive weight on its trademark registration in the face of an undisputed summary judgment record establishing no prior years of identity. Well, we know what the record is. So let's say we agree with the district court, or at least we find it was not an abuse of discretion to exclude the untimely silkscreen evidence. Now we get to the decision of whether there's a trial issue of fact for purposes of summary judgment. They do have the presumption because they filed the application, right? Yes, Your Honor. So now the question is, what did Nike come up with in order to rebut that presumption? You rely very heavily on the investigator's report, but I don't see in that report any mention of DTOM. Your Honor, Nike has come up with three types of evidence that warrant summary judgment here. The first, as Your Honor pointed out, is the testimony and the report of Nike's investigator. That, however, is not the only piece of evidence. What we also have here is an extensive discovery record in this litigation where Nike repeatedly asked Bauer for proof of actual use in commerce at some time before Nike's accused activities, and Bauer repeatedly came up empty and was only able to offer conclusory statements that it was using the goods in commerce. If Your Honor looks at the record, looks at Luke Bauer's summary judgment declarations, pages ER 453 to 456. The question is, who's got the burden? They have the presumption. Nike is able to demonstrate that it used it between December 2005 and August 2006. You have that. You've got the burden. You've got to come forward with evidence to rebut their presumption of priority of use, and so it seems to me the key piece of evidence that Nike came up with to rebut the presumption is the Kelly, is it Frank Kelly, right, the Frank Kelly investigation, right? Was there something else other than the Frank Kelly investigation that I may have missed from the record? Your Honor, the evidence that Nike came up with that reflect its own investigations into Bauer's use are Mr. Kelly's investigation, Mr. Kelly's conversations with the Bauers, and also Nike's own trademark searches. And Your Honor, when you look at Mr. Kelly's testimony on this point, it is far more than just speculation from silence. Mr. Kelly said that it was his practice to ask if there had been any use, and if there had been any use, he would have stopped the conversation, he would have asked for proof of it and done various things. However, based on his recollection of the conversations, Mr. Bauer never said there was any use. Notably, neither of the Bauers ever said during discovery that they had told Mr. Kelly that there was any use. Did they know who Mr. Kelly was and whom he was representing and what his purpose was? Your Honor, my understanding... The record show, okay, let's start there. My understanding is that the record shows that they knew that Mr. Kelly was contacting them to see if he could purchase the registration on behalf of someone. I don't believe that they knew at that time who the client was. And Mr. Kelly detailed his protocol for these types of conversations and provided uncontradicted testimony that neither of the Bauers said that there had been any use. In addition, on March 1, 2006, when he spoke with Luke Bauer and made another offer to purchase the registration, what Luke Bauer said to him was, I've spoken to a licensing agent who's interested in developing products with the slogan. Luke Bauer didn't say, no, we want to keep the registration because we're using Don't Tread on Me on our own products and we want to stay in business. No, he said he had spoken to a licensing agent about developing products and we later found out that even that statement was false because he admitted later on in his deposition that he hadn't spoken to a licensing agent until 2009. Well, why isn't it still a credibility determination for the jury? He's going to take the stand if there were a trial and he's going to testify that, oh, yes, in fact, we've used it on T-shirts and here are the various ways in which we had used it. That's consistent with the application, at least a portion of the application. The jury's going to make that call. Your Honor, it's not a credibility issue because Mr. Bauer has already had that opportunity to come up with that evidence on summary judgment. And we see in the record what Mr. Bauer came up with both at his deposition and also in his declarations. And, Your Honors, if you look at Luke Bauer's declaration on pages ER 453 to 456 and his other declaration on 530 to 535, the only statements about Bauer's use of the assertive marks in commerce before Nike's accused activities are entirely conclusory. In the declaration submitted in opposition to Nike's summary judgment motion, page ER 454, he simply says Bauer is an apparel company that sells T-shirts under the brand. Since its launch in 2004, Bauer's brand has been a success. And in this declaration, there is no detail whatsoever, Your Honors, about the nature of the use, the types of goods, to whom they were sold, where they were sold. And, Your Honor, this Court has repeatedly made clear that uncorroborated, conclusory and self-serving statements in affidavits are not sufficient to overcome summary judgment. How do you get so excited over a T-shirt? Your Honor, I'm sorry, you say? Why do you get so excited over a T-shirt? And especially when you're using the phrase, don't tread on me, which has been used in this country since 1777 on our ships. And also we used it in 2001. The Navy ran that. Yes, Your Honor. Ran that ensign up. And what about this fair use doctrine? What if I want to have a T-shirt with don't tread on me? Did I go out and make one? Am I infringing on your trademark? Your Honor, Nike does not have a trademark on don't tread on me or DTOM, and Nike has not used either of those terms in a trademark manner. Your Honor, therefore, Nike has a fair use defense that it asserted at summary judgment. The district court did not rule on it. If there were a remand in this case, Your Honor, Nike would continue to pursue its fair use defense and its other defenses at summary judgment. However, Your Honor, this case should not go back because, as I believe Your Honor correctly said. What more? I mean, he said as a young man, so far as I can tell, he was unaware at the time of the investigation what its real purpose was to find out when, in fact, they had first started selling these things. And I don't know what more we or the law expects in this kind of situation than the simple statement, you know, we started to sell our launch in the date you just referred to. I mean, that's, you know, I realize, I mean, was he asked more in deposition? Well, where did you sell it? To whom did you sell it? And so forth and so on. It was all of that. I don't know. I mean, if that's in the record, then that's there and that's well taken. Yes, Your Honor. Very detailed questions were asked in deposition. What did he say? And he, both of the Bowers said that they could not recall when they first started selling products bearing Don't Tread on Me or DTOM. So there was no recollection at all and no documentary evidence at all, no invoices, no shipping receipts, no orders, advertisements, third-party testimony, none of the types of things that you would expect a party to produce in order to corroborate actual use if they had actual use. And, Your Honor, that is why this Court has said in cases like FTC v. Niovi 604 F3rd 1150 that when all you have is conclusory and uncorroborated testimony, that is insufficient to create a dispute of material fact on summary judgment. And this Court specifically said And what kind of case? What sort of issue? Your Honor, that was not a trademark case. I believe that that involved competition issues. But it articulated the principle broadly in that and other cases we cited on page 40 of our brief. And I agree that that's a conventional, straightforward statement of black-letter law that's generally applicable across the board in summary judgment proceedings. Yes, Your Honor. I'm just not sure that it really fits as completely as you would like me to believe when it just I think this whole issue stands or falls upon its credibility, and that's an issue for the jury. Your Honor, this Court in FTC v. Niovi made very clear that when you reject the very type of statements that the Bowers have offered here on summary judgment, that is not improper weighing of evidence. It is not fact-finding. If you could always offer a conclusory affidavit like what we have here and thereby avoid summary judgment, then the purpose of summary judgment as a vehicle to filter out cases that should not proceed to trial would be destroyed. Your Honor, despite having multiple opportunities through deposition and through affidavits, the Bowers were never able to offer anything other than these conclusory, uncorroborated statements and were unable to offer any documentary or any other testimonial evidence to back it up. A defendant like Nike can do no more in order to create that record. And Your Honor is correct that Nike did have the burden of overcoming this presumption, a presumption that Bower was able to get simply by making statements to the PTO, statements that were never tested, statements that for the most part they have already admitted were false. And for the parts they haven't admitted were false, they've been unable to come up with any evidence to back them up. When you combine that with Frank Kelly's investigation and with the discovery record and with some of Nike's own trademark searches, the only conclusion that the record can support is that there is no evidence of using commerce. When were the Bowers asked on deposition to recall when they actually started selling the shirts? Your Honor, are you asking for the dates of the depositions? Yes, what year? Your Honor, I believe that those depositions occurred in the neighborhood of late 2010 through mid-2011. Four or five years after. Apparently these guys were all kinds of businesses at the time, is that right? Yes, Your Honor. They were multi-entrepreneurial. And Your Honor, the fact that they had multiple businesses not only destroys any possible probative value of the tax returns and the postage stamp receipts they offered, but it also defeats Luke Bowers' claims of a lack of sophistication, including the longer listing of goods in the trademark application, because in 2001 he had filed a trademark application on behalf of Bink with a much shorter description of goods. Your Honor doesn't need to reach those issues in order to affirm the summary judgment here. Those are more dimensions of the discovery record here that reinforce the absence of any probative evidence that could warrant going to trial. And Your Honor, again, this Court has made clear that the mere offering of uncorroborated, conclusory, self-serving declarations like we have here are not enough to survive summary judgment. Therefore, the District Court properly performed its task in filtering this case out as one that should not proceed to trial because Nike prevails on the undisputed facts. Thank you, Your Honors. I have 58 seconds, so I'll try to make it last. With respect to nonexistence, Nike keeps saying Bauer didn't show, Bauer didn't show. It's not Bauer's burden. What about the doctrine that conclusory statements aren't enough to get you past a motion for summary judgment? When you look at the statement that's required to get a trademark, that would be conclusory, but it is accepted. You shouldn't have a higher standard once Nike decides to challenge it in a court of law. That's not fair. That's a double standard. And then you've said several times, and I agree with you, this is going to be a case where there's credibility issues. Let it go to trial. But on some of the credibility issues, if you look at the opening brief, understand that the Bauers copied from their list of goods from, there's an identical one for the public company Pacific Sunwear, whose applications were filed by a very well-known attorney, Mr. Murphy, practicing for decades. I think that's an issue for the jury if you get 4-1 rather than, at least for me. I agree. I agree with you. If the court has no further questions, I'm out of time. Thank you.
judges: Carr, Pregerson, Nguyen